GIFFORD *v.* FIRST NATIONAL BANK OF MENOMINEE.

1. CHARITIES—NULLIFICATION OF TRUSTS.

Act of probate court in approving agreement between executors and beneficiaries under a will whereby a number of spendthrift trusts were nullified and beneficiaries given outright a certain portion of the property *held,* not to nullify residuary charitable trust to which remainders of such trusts were to be added eventually.

2. SAME—DEATH OR DECLINATION OF TRUSTEE.

Charitable trust does not fail because trustees named in will therein die or decline to serve notwithstanding testator indicated he had confidence in named trustees and vested them with a rather large measure of authority, where will contemplated appointment of a successor to one of the trustees and a trustee has been appointed and has taken possession of the corpus.

3. SAME—FAILURE OF TRUSTEES TO ACT WITHIN TIME PRESCRIBED—REVERTER CLAUSES.

Failure of trustees under a charitable trust to apply funds to purpose named within time prescribed *held,* not to defeat trust, whether failure to act within such time was excusable or not and especially where there is no reverter clause in the will.

4. TRUSTS—LACK OF TRUSTEE—EQUITY.

A perfectly defined trust will not fail for lack of a trustee, but a court of equity by its general inherent jurisdiction over trusts can supply one (3 Comp. Laws 1929, § 13512).

5. CHARITIES—REVERTER CLAUSE—FAILURE OF TRUSTEES TO ACT.

A charitable trust is favored in the law and, in absence of a reverter clause, it cannot be defeated by failure of executors and trustees to carry it out as courts will compel performance and appoint successor trustees, if necessary to effectuate purpose of trust.

6. SAME—BREACH OR NONEXECUTION OF TRUST—PARTIES.

Heirs and personal representatives of a donor have no beneficial interest reverting or accruing to themselves from the breach or nonexecution of a trust for a charitable use.

7. SAME—ACCEPTANCE—AMOUNT OF FUND.

Residuary bequest to charitable purposes under will *held*, not to have failed by reason of nonacceptance by competent trustees within time limited by will, nor because trustees declined to act, nor because of agreement between executors and certain beneficiaries materially minimized corpus of the trust where a very substantial trust fund remains to be administered.

8. SAME—FAILURE OF FUNDS—CY PRES.

If charitable trust fund decreases in value so that original purposes of the charity cannot be accomplished the scheme of the charity may be changed *cy pres*.

9. SAME—PARTIES—ADMINISTRATION OF TRUST.

Heirs at law and beneficiaries under will leaving residuary to charitable purposes have no interest in subject-matter of suit relative to administration of trust (3 Comp. Laws 1929, § 13513).

10. SAME—APPOINTMENT OF TRUSTEES—RATIFICATION BY CHANCERY COURT OF PROBATE COURT APPOINTEES.

Ordinarily where there is some indefiniteness or uncertainty of the object of a charitable trust or of persons designated as beneficiaries thereunder court of chancery has power to appoint trustees, but where case has been before proper circuit court in chancery and decree entered which in effect ratifies appointment of trustee who had been appointed by probate court and directed them to act, the proper appointment is deemed to have been made (3 Comp. Laws 1929, §§ 13512, 13513).

11. SAME—CY PRES—PROPOSED PLAN.

Proposed plan of administration of charitable trust left for furtherance of the medical arts and kindred purposes which involves pledge of substantially half of assets for building purposes whereas bequest specifically limited such amount to one-fourth, which deviation was necessitated by great shrinkage in value of assets because of general depression and trust income will be sufficient to pay obligation incident to which pledge is to be made *held*, proper where execution of original plan of testator has become impossible.

12. Same—Cy Pres.
    The doctrine of *cy pres* is recognized in this State.

Appeal from Menominee; Bell (Frank A.), J. Submitted April 15, 1938. (Docket No. 83, Calendar No. 40,002.) Decided June 6, 1938.

Bill by Margaretta Gifford and others against First National Bank of Menominee, Cecil J. Scanlan and Albert G. Cherney, trustees, and F. Earl Lanthier, Prosecuting Attorney, to determine the validity of certain charitable trusts and for other relief. From decree rendered, plaintiffs appeal. Affirmed.

*Victor A. Lundgren, Jr.* (*Meredith P. Sawyer,* of counsel), for plaintiffs.

*Thurman B. Doyle, Kenneth O. Doyle, F. J. Trudell* and *George Barstow,* for defendants.

North, J. Plaintiffs herein, as heirs at law and beneficiaries under the will of Marshall B. Lloyd, deceased, brought this action to determine whether a charitable trust for which provision was made in Mr. Lloyd's will has lapsed or has been rendered impossible of performance by events subsequent to testator's death.* Plaintiffs also assert that this

---

* "Fifth: All interest, residue and remainder of my property, real, personal and mixed, I give devise and bequeath unto (three named trustees). * * *

"Eighth: My said trustees shall set aside for the several beneficiaries herein named the number of shares herein provided for them, respectively:

"(1) Ten shares shall be initially set aside and held in trust and shall be known as the Marshall B. Lloyd Fund, and to it shall be added and become part thereof the shares hereinafter specifically set forth. * * * Said Marshall B. Lloyd Fund (meaning thereby said ten shares and all increment of and additions thereto) shall be devoted to charitable uses. The charitable uses to which the said Marshall B. Lloyd Fund shall be put shall be charitable uses connected with the following purposes: the furthering of the medical

testamentary trust lapsed by reason of nonperformance within the time specified in the will, and they challenge the legality of the appointment of Albert G. Cherney and Cecil J. Scanlan as two of the trustees, as well as the fitness of these two men to execute the trust; and finally plaintiffs attack a proposed plan of executing the trust on the ground that it is not in accord with the provisions of Mr. Lloyd's will. In effect, the decree entered by the circuit judge dismissed plaintiffs' bill of complaint, and they have appealed.

Marshall B. Lloyd died August 10, 1927, leaving a large estate of which he made disposition by a will and codicil which were duly admitted to probate. We are in no way concerned in this suit with many provisions in the will; nor can decision herein be influenced by certain things done incident to probating the estate. Among such was the order of the probate judge made over eight years ago by which an agreement entered into between the executors and certain beneficiaries under the will was approved, and thereby a number of alleged spendthrift trusts established by the will were wholly nullified and in

arts, the practice of medicine, the care of the sick, medical education, the spreading of knowledge of hygiene and care of the sick, child welfare, the establishment and operation of hospitals, laboratories, dispensaries and medical diagnostic institutions, or any or either of said purposes which may properly come within charitable uses. I specifically recommend the establishment of an institution in Menominee, Michigan, for medical diagnosis and temporary care of the sick. The application and payment of moneys or securities shall be made upon the advice of my individual trustees, but the custody of funds shall remain with the corporate trustee. My trustees shall have the right to transfer said fund or any portion thereof to any corporation or association now formed or which hereafter may be formed, having powers appropriate to the carrying out of said purposes, or any of them, and may cause the organization of a corporation or association for such purposes or any of them, but shall pay over and deliver funds to such corporation or association only upon the agreement by such corporation or association to use not to exceed the one-fourth part thereof for building purposes, and to use the remainder as a permanent endowment fund.''

lieu thereof the beneficiaries given outright a certain portion of the property belonging to the estate. A number of the plaintiffs in the instant case were parties to the above mentioned agreement and for that reason ought to be estopped from challenging its validity. But entirely aside from this circumstance, the transaction approved by the probate court was consummated more than eight years ago and it is now beyond the power of the court to correct it and establish a *status quo ante*. Suffice it to say that the act of the probate court in approving the agreement did not nullify the charitable trust for which provision was made by Marshall B. Lloyd in his will.

At the time this bill of complaint was filed the residue of the Lloyd estate had been transferred to the three trustee defendants. This residue which constituted the corpus of the charitable trust is shown by the record to be of a present value somewhat in excess of $210,000. The manner in which the testator disposed of his estate (aside from certain bequests with which we are not at all concerned) and the purposes in which he was interested and for which he provided a charitable trust are indicated by the portion of his will quoted in the margin hereof. In effect, by the trust provisions of his will Mr. Lloyd divided his estate into aliquot portions or shares, and provided that 10 of these shares should be set aside and held in a trust fund known as the Marshall B. Lloyd Fund, which, with subsequent additions thereto, should be devoted to charitable uses such as ''furthering of the medical arts, the practice of medicine, the care of the sick, medical education, the spreading of knowledge of hygiene and care of the sick, child welfare, the establishment and operation of hospitals, laboratories, dispensaries and medical diagnostic institutions, or any or

either of said purposes which may properly come within charitable uses." The testator further recommended in his will the establishment of "an institution in Menominee, Michigan, for medical diagnosis and temporary care of the sick." As to the balance of the estate covered by the testamentary trust, certain specified beneficiaries were given the income during their respective lives, and upon the death of each of such beneficiaries these respective portions became a part of the corpus of the charitable trust. However, as above indicated, by reason of the probate court having approved a settlement entered into between the executors of the estate and these individual beneficiaries, all such trust provisions are now eliminated from the factual situation of the case and the trustee defendants are possessed of property of the value above stated to be devoted to the charitable trust.

Both the executors and the trustees were vested by the terms of the will with rather plenary powers in the management of the estate. But the will does contain the following provision:

"My trustees shall be required to devote to such uses from time to time, the initial fund of 10 shares, within 10 years from the date of my demise, and all further shares or proceeds thereof, within 10 years from the termination of the life estate subject to which they are held, and other funds, if any, within 10 years after my death."

The bill of complaint was filed more than 10 years after Mr. Lloyd's death and the trustees had not yet devoted any of the trust funds to any of the purposes specified in the will. In fact the trustees named in the will and codicil declined to serve and in their stead the probate court named as trustees the First National Bank of Menominee, Cecil J.

Scanlan and Albert G. Cherney. Two of the questions propounded by appellants are:

"Was this (charitable) bequest accepted by any competent authority within the time limited by the terms thereof?"

"Did the charitable legacy in the will of Marshall B. Lloyd lapse upon the named trustees declining to act?"

It is true, as asserted by appellants, that the testator's gift in trust for charitable purposes to the named trustees indicated he had confidence in them, and further these trustees were vested with a rather large measure of authority. Like circumstances usually attend the creation of a trust. But it does not follow in event of the death of a trustee named in a will or his refusal to serve that the trust must fail. By the provisions of this will it is contemplated that it may become necessary to appoint a successor to the corporate trustee; and plaintiffs have alleged in their bill and defendants have admitted in their answer that the First National Bank of Menominee "was duly and legally appointed corporate trustee * * * and now has in its possession" the corpus of the trust estate. Under such circumstances it is of little or no consequence for decision herein as to whether either of the two individual trustees was or was not legally appointed. An appointment, if necessary, may yet be made to fill a vacancy, if one exists in such trusteeships. It is sufficient to note that a trust will not fail for want of a trustee or because of the trustee's inaction. The provision in the instant case as to applying the available trust funds to the charitable purposes within the fixed period of 10 years was merely a direction to the trustees. Failure to do so, whether

excusable or not, does not defeat the trust. Especially is this true since there is no reverter clause in the will.

"Had no trustee been named, the rule is familiar that a perfectly defined trust will not fail for lack of a trustee, but that a court of equity, by its general inherent jurisdiction over trusts, can supply one." *Penny* v. *Croul,* 76 Mich. 471, 476 (5 L. R. A. 858).

See, also, *In re More's Estate,* 179 Mich. 237; *King* v. *Merritt,* 67 Mich. 194; *Kelsey* v. *Detroit Trust Co.,* 265 Mich. 358; and 3 Comp. Laws 1929, § 13512 (Stat. Ann. § 26.1191).

"Charitable trusts are favored in the law. In absence of a reverter clause, the trust cannot be defeated by failure of executors or trustees to carry it out. Courts will compel performance. Courts will not permit trusts to fail for want of trustees, but will appoint successor trustees to carry out the trust when deceased trustees have failed or omitted to do so. These are truisms. 2 Restatement of the Law of Trusts, p. 1222, comment (a)." *In re Mead's Estate,* 227 Wis. 311 (277 N. W. 694, 279 N. W. 18).

"It is also considered as a settled rule, that such a gift to a charitable use is to receive a most liberal construction; and if the trustees pervert the fund to other uses, or even if they refuse to accept or execute the trusts, the charity itself shall not fail, nor will the property revert to the donor. But it will be competent for a court of chancery to direct, in the former case, that the trusts shall be executed, and in the latter, that new trustees shall be appointed, in whom the legal estate shall vest, to be holden in trust for the purposes of the charity." *Inhabitants of Hadley* v. *Trustees of Hopkins Academy,* 14 Pick. (31 Mass.) 240.

"Heirs and personal representatives of a donor have no beneficial interest reverting or accruing to

themselves from the breach or non-execution of a trust for a charitable use.'' 2 Perry on Trusts and Trustees (7th Ed.), p. 1273.

In the light of the above authorities and many others which might be cited, it must be held that this charitable trust has not failed by reason of non-acceptance by competent trustees within the time limited by the terms of the will nor by reason of the trustees named in the will having declined to act.

Appellants also present the following question:

"Was this legacy rendered void as impractical and impossible of performance through the conditions leading up to and by the compromise agreement approved by the probate court May 29, 1930?"

Appellants assert that Mr. Lloyd's bequest to charity was thus defeated. In this we cannot agree. While it is obvious that the compromise agreement referred to in the above question materially minimized the corpus of the charitable trust, this is no reason for holding that the trust is thereby defeated *in toto*. Especially since, as hereinbefore indicated, there still remains a very substantial trust fund to be administered. It seems unnecessary to cite authority in support of this conclusion, but the following is to the point:

"If a fund decreases in value, so that the original purposes of the charity cannot be accomplished, the scheme of the charity may be changed *cy pres*." 2 Perry on Trusts and Trustees (7th Ed.), p. 1239.

Our opinion in the instant case might well be concluded at this point because we have disposed of every question bearing upon the validity of the trust; and having held, as we do, that the trust is valid, none of these plaintiffs have any interest whatever in the subject-matter of this suit. By statutory pro-

vision the responsibility for the proper administration of a trust of this character is placed in the "prosecuting attorney of the county in which the court of chancery shall have jurisdiction." 3 Comp. Laws 1929, § 13513 (Stat. Ann. § 26.1192). Plaintiffs recognize the official interest of the prosecuting attorney in this trust by making him a party defendant.

Notwithstanding this lack of interest, we note two other questions presented by appellants. The first of these questions challenges the appointment by the probate court of Albert G. Cherney and Cecil J. Scanlan as trustees. It is appellants' contention that the charitable trust in the instant case is one of the class included in 3 Comp. Laws 1929, § 13512 (Stat. Ann. § 26.1191), since there is some "indefiniteness or uncertainty of the object of such trust or of the persons designated as the beneficiaries thereunder in the instrument creating the same;" and that, therefore, as provided in the same section, in case a vacancy occurs in the trusteeship "then the trust shall vest in a court of chancery for the proper county, and shall be executed by some trustee appointed for that purpose by or under the direction of the court." See, also, 3 Comp. Laws 1929, § 13513. Appellants conclude that since the chancery court under the statute had jurisdiction of this trust, the appointment of the two trustees named by the probate court was void. For the purposes of this case it may be so conceded, but the record discloses that this case, including the trustees named, has already been before the circuit court of Menominee county in chancery and after full hearing a finding was made and a decree entered by the circuit judge which in effect ratifies the appointment of these trustees, including an approval of their qualifications to act, and directs them to proceed with the execution of

the trust. We deem this tantamount to appointment by the circuit court in chancery. If a further and more specific order is deemed necessary, or the giving of bonds is requisite, et cetera, orders can be made accordingly.

The remaining question presented by appellants is as follows:

"Is the plan of said trustees as approved by the chancellor a proper execution of the trust?"

The record fairly indicates that the proposed plan is somewhat of a deviation from that contemplated by the testator; but notwithstanding this the proposed plan devotes the trust fund to the same general field of charitable activity contemplated by the donor. Circumstances disclosed by the evidence which justify and indeed necessitate somewhat of a deviation from the original plan of executing this trust are disclosed by the following quoted from the opinion of the trial judge:

"At the time of his death Marshall B. Lloyd was estimated to be worth between two millions and two and one-half millions dollars. He had an estimated annual income of 100,000 to 150,000 dollars. The principal asset of his estate was corporate stock of Heywood-Wakefield Company. * * * But the Heywood-Wakefield Company, like many another, soon fell upon evil days. The general depression came along. The value of its stock shrunk to a fraction of its former selling price in the market, and there were no earnings for distribution. For nine years prior to December, 1936, the Heywood-Wakefield Company paid no dividends. * * * If because of the shrinkage in value of the fund the purpose of the testator cannot be carried out exactly as planned then the rule of *cy pres* authorizes the court to see that it is carried out as nearly as possible according to his plan."

Even appellants in their brief state: "It is undisputed that execution of Mr. Lloyd's intentions on the basis he planned has become impossible and impracticable by reason of shrinkage of the fund."

It would serve no purpose to recite in detail the proposed plan of the trustees which has already been approved by the circuit judge before whom testimony was taken at length. In attacking the proposed plan, the point most urgently stressed by appellants is that it will involve pledging substantially half of the corpus of the trust estate for the purpose of raising funds with which to erect a building to carry on the activities of this trust. This appellants assert is in direct violation of the provision in Mr. Lloyd's will that not to exceed one-fourth part of the corpus of the trust shall be used for building purposes and the remainder is to be used as a permanent endowment fund. While the plan proposed has the uncertainty of all human affairs, still there is testimony from which it may fairly be concluded that the income of the trust estate will be sufficient to pay the obligation incident to which the pledge is to be made. The record discloses that an extensive effort has been made to ascertain what is the best plan under which this trust can be executed in view of changed conditions. The result of this investigation justifies the plan proposed by the trustees and approved by the circuit judge. While, as before stated, it deviates somewhat from the plan of using the funds contemplated by the donor, still it is within the same field of charitable activity and is permissible under the doctrine of *cy pres* which is recognized in this State. *Appeal of Hannan,* 227 Mich. 569.

The decree entered in the circuit court is affirmed, with costs to appellees.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, CHANDLER, and McALLISTER, JJ., concurred.