SCHEU v. STOLL.

1. WILLS—CONSTRUCTION—TESTAMENTARY   TRUST—DEVISE   UPON
   CONDITION PRECEDENT.
   Devise of testatrix' home to her sisters in trust for purpose of
   providing a home and personal care therein for testatrix' in-
   valid son during his lifetime and upon his death to pass to
   the sisters or the survivor of them in fee simple created a
   condition precedent to the vesting of title in the sisters,
   especially in view of further provisions that trustees should
   receive no compensation for services other than right of oc-
   cupancy on death of son and that, if one sister ceased to
   carry out provisions of trust and remaining one did, property
   was to go to latter upon death of son and if, for any reason,
   both were unable or prevented from carrying out trust, prop-
   erty was to pass to her husband and sisters, share and share
   alike upon death of son.

2. SAME—DEVISE UPON CONDITION PRECEDENT.
   Language of will showing that act on which estate depends
   must be performed before estate can vest provides a condition
   precedent to the taking by the devisee.

3. SAME—PERFORMANCE OF CONDITION.
   When a condition is one of fact, and not left open to option or
   contingency, it makes no difference why it is not performed,
   when the only right that the devisee has to receive any bounty
   from the estate is found in the words of the will.

4. SAME—IMPOSITION OF FINANCIAL OBLIGATION UPON HUSBAND.
   A testatrix has no power by will to impose a financial obliga-
   tion upon her husband.

5. SAME—PARENT AND CHILD—MENTALLY INCOMPETENT SON—CUS-
   TODY.
   A testatrix cannot deprive her husband, by testamentary pro-
   vision, of his legal and moral right to the custody of his
   mentally incompetent and physically helpless son.

6. SAME—DEFEAT OF CONDITION PRECEDENT—MAINTENANCE OF HELP-
   LESS CHILD.
   Under testamentary provision obviously designed to perpetuate
   maintenance of mentally incompetent and physically helpless
   son of testatrix in home surroundings during remainder of his
   life, where boy's father, subsequent to death of testatrix, had
   boy placed in an institution for care of such patients, and in

When specified behavior is a condition precedent or is a basis for
the defeasance of an interest, see 3 Restatement, Property, § 275.
Trust will not fail when person designated as trustee ceases to
be trustee, see 1 Restatement, Trusts, § 101.

so doing acted entirely within his legal rights, condition precedent to vesting of title in sisters of testatrix to whom property was left in trust for purpose of maintaining boy in the home and upon his death to pass to sisters was defeated.

7. TRUSTS—FAILURE TO APPOINT TRUSTEE.

The failure to appoint a trustee does not defeat the purposes or the execution of a testamentary trust and where will provided for appointment of another trustee in case nominees under will should be prevented from acting, to carry out the ·trust as nearly as possible, will is construed as though a trustee had been appointed.

8. WILLS—TESTAMENTARY TRUST—CONDITION PRECEDENT—MAINTENANCE OF INVALID CHILD.

Under will devising home of testatrix to her sisters in trust for occupancy to provide a home and personal assistance for her invalid son, and title to pass to them upon son's death, and in case they were unable or prevented from doing so providing that another trustee be appointed, son institutionalized if necessary and rent of home applied toward his maintenance, and if property be under control of a trustee at son's death, sisters and husband were to have property on equal shares and husband was made residuary legatee, where son was placed in an institution by father, house rented by him and son's expenses paid for by him, upon son's death title passed to the sisters and husband on equal shares, notwithstanding no trustee was appointed pursuant to terms of will.

9. SAME—CONSTRUCTION—COSTS.

In suit to construe a will, where neither party has fully sustained position on appeal, no costs are awarded.

Appeal from Wayne; Webster (Arthur), J. Submitted January 16, 1942. (Docket No. 88, Calendar No. 41,886.) Decided April 6, 1942. Rehearing denied May 18, 1942.

Bill by Mary H. Scheu and Louise M. Scheu, individually and as trustees under the last will and testament of Bertha Stoll, deceased, against Herman Stoll, individually and as executor under the last will and testament of Bertha Stoll, deceased, for construction of a will and other relief. Cross bill by defendant against plaintiffs for con-

struction of will and other relief. Decree for plaintiffs. Defendant appeals. Modified.

*Edgar G. Braun,* for plaintiffs.

*Charles Bowles,* for defendant.

NORTH, J. The bill of complaint herein was filed for the purpose of obtaining a construction of the will of Bertha Stoll, deceased. At the time of her demise she was the sole possessor of title to her home property, known as No. 2708 Glynn Court avenue, Detroit, Michigan. Plaintiffs, who are sisters of the deceased, assert title under the will to the Glynn Court property. The defendant, who was the husband of deceased, by cross bill likewise asserts title under the will to the property. From a decree construing the will as vesting title in plaintiffs, defendant has appealed.

Herman Stoll and Bertha Stoll were married in 1912. One child, Richard Stoll, was born of their marriage. This child was mentally incompetent and physically helpless from birth. Mrs. Stoll died in December, 1939; and the son, Richard, died in December, 1940. For several years prior to the death of Mrs. Stoll plaintiffs herein had lived in the home of the Stoll family and, excepting a period when he and his parents were in Germany, had assisted in taking care of the son Richard. And plaintiffs continued to reside in the home and to care for the son until April, 1940, at which time defendant caused his son to be removed from the home and placed in the Kitson Home, a place which provided care for patients of this type. But plaintiff Louise Scheu accompanied Richard to the Kitson Home and continued to care for him until September, 1940, at which time defendant caused the son to be removed

to the Rogers Home, which was of a character similar to the Kitson Home. Louise was not permitted to continue caring for Richard except for a few days after he was placed in the Rogers Home. This was because of institutional regulations. Prior to placing the son in the Kitson Home defendant had been appointed guardian of his incompetent son by the probate court. This was done over the objection of plaintiffs. At all times the cost of caring for the son Richard was paid by his father. Some time after placing his son in the Kitson Home defendant, who was the executor of his wife's estate, leased the Glynn Court residence, and thereafter plaintiffs ceased to reside there.

The pertinent provisions of Mrs. Stoll's will are as follows:

"Third: To my said beloved sisters, Mary and Louise Scheu, I give and devise my home known as No. 2708 Glynn Court avenue, Detroit, Michigan, in trust, however, for the following purposes:

"(a) My said sisters are to occupy said premises as their home and shall provide a home for my beloved invalid son, Richard Wendell Stoll, with them for the remainder of his natural life, and upon his death, said premises shall pass to my said sisters, or the survivor of them, in fee simple.

"(b) In addition to providing a home for my said son my said sisters are to render him such personal assistance as he may reasonably require.
\* \* \*

"(c) Said trustees shall at their own expense, pay all taxes assessed against said premises and shall keep the same in a reasonably good state of repair, so that it shall not be unduly subjected to deterioration.

"(d) If, for any reason, said trustees shall be unable or shall be prevented from carrying out the terms of this trust, and provide my said invalid

son with a home, as herein directed, then the probate court for Wayne county, Michigan, shall appoint a trustee to take their place, who shall thereupon take charge of the said premises and carry out this trust as nearly as may be possible in the manner and form that I have directed and to maintain a home for my said invalid son at said premises, but should it prove impractical so to do, said trustee shall be at liberty, upon proper application to the probate court and the court's approval for so doing, to sell or rent said premises for the purpose of providing funds for the maintenance of my said invalid son, and if it becomes necessary to place him in an institution, I direct that such institution be selected by my friend, Dr. Nina Mangus of Detroit, Michigan. Should said property be under the control of a trustee under the provisions of this will at the time of the death of my said son, my beloved husband and sisters, or the survivor of them, shall take said property, share and share alike."

By further provisions of the will the testatrix directed that her sisters in the performance of the trust should "receive no compensation for their services as trustees other than the right of occupancy of said premises and ownership thereof on the death of my said son, as provided under the terms of this will;" and she left the residue of her estate to her husband who was nominated as the executor of her will.

Much space in the briefs is devoted to the question as to whether under the terms of the will a condition precedent to the vesting of title in plaintiffs was created, as defendant asserts; or whether, as plaintiffs claim, title vested in them subject to a condition subsequent.

Our review of the record satisfies us that the manner in which the will is drafted and the provisions therein contained created conditions precedent

to the vesting of title in plaintiffs. There can be no doubt but that the primary purpose of the testatrix was to create a trust by means of which provision should be made for the future care of her invalid son. In the first instance whatever title plaintiffs took to the property in suit under the will was vested in them "in trust." Their title was only that of trustees, not one held in their own right. The contemplated duration of the trust was the natural lifetime of the son; and it was only "upon his death" that under the terms of the will the title was to pass to plaintiffs "or the survivor of them in fee simple." From the last-noted provision it obviously remained uncertain and contingent as to whether one or the other or both of plaintiffs would take the title in fee at the expiration of the trust. The will further provided that in event one of the two plaintiffs ceased to carry out the trust, "the remaining sister shall carry out and perform the terms of this trust, and *upon the death of my said son,* such sister shall take the entire title to said premises in fee simple individually." And further, the will provided that if the plaintiffs as trustees "shall be unable or shall be prevented from carrying out the terms of this trust," then the probate court should "appoint a trustee to take their place;" and in such event the property in suit should "at the time of the death of my said son" pass to the two plaintiffs and defendant "share and share alike." The foregoing and other provisions of the will are wholly inconsistent with plaintiffs' claim that upon the death of the testatrix they took title to the property in suit subject only to a condition or conditions subsequent.

" 'If the language of the particular clause or of the whole will shows that the act on which the estate depends must be performed before the estate can vest, the condition is, of course, precedent, and

unless it be performed the devisee can take nothing.' " *Markham* v. *Hufford,* 123 Mich. 505 (48 L. R. A. 580, 81 Am. St. Rep. 222).

"When a condition is one of fact, and not left open to option or contingency, it makes no difference why it is not performed, when the only right that the devisee has to receive any bounty from the estate is found in the words of the will." *Johnson* v. *Warren* (syllabus), 74 Mich. 491.

Plaintiffs assert that they were at all times ready and willing to execute the trust imposed upon them by the terms of the will, and that they were wrongfully prevented from doing so by the defendant who, under his right as parent and guardian appointed by the probate court, removed the invalid son from the parental home and finally from the custody and care of plaintiffs. If, in so doing, defendant had been guilty of wrongdoing or possibly if he had been prompted primarily by a desire to defeat the trust or to prevent its execution, there might be persuasive force to plaintiffs' contention.

But this record discloses that even during the lifetime of Mrs. Stoll, defendant was desirous of placing the son Richard in an institution, and was deterred from doing so only because of his willingness to respect the desire of his wife that the child should be maintained in the home surroundings. Obviously by the terms of her will the testatrix undertook to perpetuate, during the remainder of his life, the conditions under which Richard ha'. been maintained. But she did not provide the financial means with which to carry out this plan. Instead, we think it appears from this record that the testamentary plan of Mrs. Stoll was quite impossible of execution except defendant herein provided the financial means. The death of Richard so shortly after the demise of Mrs. Stoll was not antic-

ipated. The testatrix had no power by her will to impose a financial obligation upon defendant. Nor could she deprive him by testamentary provisions of his legal and moral right to the custody of his son; and she did not by the terms of her will relieve the defendant of his legal, as well as his moral, obligation to support his son. This record does not disclose facts or circumstances which would sustain a conclusion that defendant in his course of conduct subsequent to Mrs. Stoll's death was guilty of any wrongdoing or that in what he did do he was prompted by desire to defeat the trust provisions of this will.

It conclusively appears from the record that plaintiffs did not carry out the terms of the trust. We think it appears from the testimony they were not able to nor did they furnish the financial means with which to maintain the invalid son in the home. Such expense at all times was borne by the defendant. Nor did plaintiffs, as is required by the terms of the will, "pay all taxes assessed against said premises," or do anything toward repairing the premises; although as to this latter item it should be noted it does not appear there was any occasion for repairs. The son Richard was not maintained in the Glynn Court home except for a period of about four months following the death of his mother; and after Richard was placed in the Rogers Home he was entirely removed from the care and custody of plaintiffs. Clearly the terms and conditions of the trust embodied in the will of Mrs. Stoll were not complied with by plaintiffs. It is not an answer to say that this condition was brought about by defendant's method of providing for his son, especially in view of the fact that in so doing defendant was acting entirely within his legal rights.

As quoted above, the will provided in paragraph 3, subdivision (d): "If, for *any reason,* said trustees shall be unable or *shall be prevented* from carrying out the terms of this trust," then a trustee was to be appointed to take charge of the devised premises, to carry out the trust as nearly as possible, with power to sell or rent the property for the purpose of providing funds for the maintenance of the invalid son, "if it becomes necessary to place him in an institution." It is true that a trustee in conformity with the just above-noted provision was not appointed; but failure to appoint a trustee does not defeat the purposes or the execution of a trust. *Penny* v. *Croul,* 76 Mich. 471 (5 L. R. A. 858); *Gifford* v. *First National Bank of Menominee,* 285 Mich. 58. Therefore, this case should be reviewed and disposed of just as though a trustee had been appointed under the above-noted provisions of the will. Had such a trustee been appointed it would seem too clear for argument that disposition of the estate of Mrs. Stoll would have been controlled by that provision of her will which reads: "Should said property be under the control of a trustee under the provisions of this will at the time of the death of my said son, my beloved husband and sisters, or the survivor of them, shall take said property, share and share alike." Under the record we think this last-quoted provision of the will became operative, that the will should be so construed, and the estate of the deceased disposed of accordingly.

We are mindful that our conclusion as just above stated is not in conformity with the contention of either of the parties, and also that by the seventh paragraph of her will Mrs. Stoll explained that she was prompted to embody the quoted provisions in her will by her desire to provide for the care and

support of her invalid son; and that she was "confident" that her husband would not be hurt or offended; and were it not for the needs of the unfortunate son she would "freely leave (her estate) to him (her husband) personally." But there is nothing in this paragraph of the will which can be held to be a gift or devise of the property in question to the husband. Further, under our construction of the will, the property in suit did not pass solely to defendant notwithstanding the deceased left to him the residue of her estate.

The decree entered in the circuit court is reversed, and one will be entered in this court in accordance herewith. Since neither plaintiffs nor defendant have sustained their position taken on this appeal, no costs will be awarded.

CHANDLER, C. J., and BOYLES, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., did not sit.