ELLENWOOD *v*. WOODLAND BEACH.

1. CORPORATIONS—NO CAPITAL STOCK—RENEWAL.
   It is necessary to have the approval of 4/5 of the members of a corporation without capital stock in order to renew the corporate life, once it has been allowed to end (CLS 1956, § 450.62).

2. DEEDS—LAKE SHORE SUBDIVISION—DEDICATION—CONSTRUCTION OF RESERVATION OF POWER TO CONTROL COMMON PROPERTY.
   Subdivider who had not reserved title in himself to the parks, clubhouses, streets, and other buildings and places within the lake shore subdivision, containing upwards of 900 lots, but had granted their common use and enjoyment to the owners of each lot, subjecting each lot to the annual payment of $10 plus special assessment for paving, but who did reserve "the right to fully control" such parks, buildings and places by language contained in each deed, thereby merely reserved the power to control such places, under construction giving to the language in such deeds its customary meaning.

3. SAME—RESERVATION OF POWER TO CONTROL COMMON PROPERTY—CONSENT.
   The acceptance by a lot owner of his deed to lot in a large lake shore subdivision indicated consent to reservation in the grantor, his successors and assigns of the power to control property of which the common use and enjoyment had been

REFERENCES FOR POINTS IN HEADNOTES    .
[1]  13 Am Jur, Corporations § 85.
    Extension or renewal of period of corporate existence.    108 ALR 59.
[2–6]  16 Am Jur, Deeds §§ 197, 309–312, 314.
[7]  39 Am Jur, Parties §§ 44, 47, 50.
    Identity or community of interests essential to class or representative suit.    132 ALR 749.
[8]  54 Am Jur, Trusts § 134.
[9]  30A Am Jur, Judgments § 629 *et seq.*
[10]  14 Am Jur, Costs § 23; 16 Am Jur, Declaratory Judgments § 75.

granted to the lot owners and imposed upon the owner of each lot the obligation to pay annually the sum of $10 plus a special assessment for pavements, all of which was contained in respective deeds.

4. CORPORATIONS—SUBDIVISION—CONTROL OF COMMON PROPERTY.
   Corporation whose membership consisted of owners of lots in large lake shore subdivision, the organization of which had obviously been contemplated by subdivider, which was organized and allowed to expire without renewal of corporate term *held*, to have succeeded by quitclaim deed from the subdivider to his reserved right to control of valuable property which had been granted to the common use of the lot owners and *augmented and improved through annual $10 assessment* to which each lot was subjected, the transfer of such right of control by quitclaim deed being of no controlling significance.

5. DEEDS—SUBDIVISION—RESERVATION OF CONTROL OF COMMON PROPERTY—RESTRAINT OF ALIENATION—PERPETUITIES.
   A subdivider grantor's reservation of right to control common property of subdivision the use and enjoyment of which had been granted by him to the owners of each lot together with annual obligation to pay $10 per lot plus a special assessment for pavements did not effect a restraint on the power of alienation or a violation of the claimed rule against perpetuities as each lot owner could convey his lot with incidental appurtenant property rights.

6. EQUITY—JURISDICTION—RESERVATION OF CONTROL OF COMMON PROPERTY OF SUBDIVISION.
   Court of equity *held*, to have jurisdiction to grant relief to lot owners in large lake shore subdivision by, in effect, ordering continuance of plan of making improvements, where each deed reserved to subdivider the power to control common property which had been granted to the lot owners and substantial improvements on which had been made over 30-year period through use of funds raised by annual assessment on each of $10 plus special assessment for pavements as provided in deeds accepted by lot owners, where the discontinuance of such plan would prejudicially affect their property rights, and as majority of such owners had elected to continue it.

7. SAME—CLASS SUIT—CONTROL OF COMMON PROPERTY OF SUBDIVISION—CONTINUANCE OF PLAN.
   A class suit was proper to obtain appropriate relief, where corporation which had exercised power of control over common

property in large lake shore subdivision had been allowed to end its term of existence and new corporation consisting of majority of lot owners sought to continue plan of operation which had existed for over 30-year period of subdivision's existence and discontinuance of plan would prejudicially affect plaintiffs' property rights.

8. SAME—APPOINTMENT OF SUCCESSOR TRUSTEE.

A court of equity has power to appoint a successor trustee where a trustee has become incapable of further performance as such.

9. SAME—MODIFICATION OF DECREE—COMMON PROPERTY—TITLE—CONTROL.

Decree that new corporation which was organized by majority of owners of lots in large lake shore subdivision after expiration of term of previous corporation which had previously been organized to control common property of the subdivision lot owners that had been granted to them by the subdivider and substantially improved through use of annual assessment of $10 per lot is modified to limit interest of new corporation to control of common property instead of title and control.

10. COSTS — CLASS SUIT — COMMON PROPERTY — CORPORATIONS — POWERS — DECLARATION OF RIGHTS — MODIFICATION OF DECREE.

No costs are allowed in class suit for declaratory decree with respect to powers of new corporation, organized by majority of owners of lots in large lake shore subdivision as to common property, as successor to former corporation, whose membership also consisted of lot owners, and whose term of existence had expired, where decree has been modified as to title of common property.

Appeal from Monroe; Weipert, Jr. (William J.), J. Submitted April 3, 1962. (Docket No. 5, Calendar No. 48,908.) Decided May 17, 1962.

Bill by J. C. Ellenwood and New Beach Association, Incorporated, a Michigan nonprofit corporation, against Woodland Beach, a Michigan nonprofit corporation, for declaratory decree in respect to individual lot owners' rights in common property and in respect to authority of newly formed corporation to succeed defunct prior corporation in preservation and maintenance of dedicated parks and beaches

in subdivision. Juanita Edmondson intervened asking dismissal. Decree for plaintiffs. Intervenor appeals. Modified and affirmed.

*Orion P. Barron,* for plaintiffs.

*James J. Kelley, Jr.,* for intervenor.

CARR, C. J. This case involves an unusual situation. In 1923 Oliver J. Golden, being the owner of certain land in Frenchtown township, Monroe county, subdivided the property, the plat being recorded in the office of the register of deeds of the county on October 22, 1923. Said plat, introduced as an exhibit on the hearing of the case in circuit court, showed streets, parks, and beach property, together with lots numbering, as it is claimed, in excess of 900 adapted to residential purposes. A heavily traveled road known as the Dixie Highway passes through the subdivision.

Following the platting of the property lots were offered for sale by the subdivider, each deed containing uniform provisions the interpretation of which is primarily involved in the case. Among other provisions in the deeds was the following:

"That each lot was sold with a common right of use and enjoyment of all parks, clubhouses, streets and beaches described upon and dedicated on the recorded plat."

It was further stipulated that the grantee in each deed should pay the sum of $10 per year to the grantor to be used for the upkeep and improvement of property within the plat. Another provision reserved to the grantor, his successors or assigns, the right to construct sewers and water mains and to improve streets, the cost of each such improvement to be met by the lot owners, the limitation of $10

per lot being applicable with the exception of assessments for pavements. The deeds further recited that:

"The grantor, his successors or assigns, reserves the right to fully control the parks, clubhouses, streets and other buildings and places within said subdivision, the use and enjoyment of which is conferred in common upon the purchasers of lots in this subdivision, and may impose and enforce all such reasonable restrictions and regulations as in his judgment may be necessary to fully preserve to all the lot owners in said subdivision the use and enjoyment thereof, and the grantee, her heirs or assigns by acceptance of this deed, are bound to abide by such rules and regulations. The grantor, his successors or assigns, reserves the right, at any time that he shall deem expedient to do so, to transfer to an association, or to the representatives of an association that may be formed by the lot owners, all the rights, powers and interests in and over the said parks, beaches, clubhouse, streets and other buildings and places, the common enjoyment of which is conferred upon lot purchasers in this subdivision, and the grantee, her heirs and assigns by acceptance hereof expressly agree that whenever any such association is formed by a concurrence of a majority of the owners of lots in said subdivision, the word 'owners' to be construed as any person owning an interest in any lot in said subdivision, either as grantee under a deed of conveyance or as vendee under a contract of purchase; provided always, said vendee or vendees shall not be in default in the performance of their contract, and provided further that no more than one vote may be cast for each lot: to thereafter abide by, become subject to, and conform to all rules, regulations, laws, assessments and conditions that may be adopted by said association and imposed, established, levied and enforced by said association, as may by said majority aforesaid, be adopted and from time to time amended

or changed. Whenever any such association is formed and a constitution and bylaws adopted by the concurrence of a majority of the lot owners voting thereon, meaning by said majority each lot owner to have one vote, the future government of said association shall be in accordance with the provisions of such constitution and bylaws so adopted and from time to time amended."

In accordance with the above quoted language the defendant corporation, Woodland Beach, was organized, and Oliver J. Golden transferred to it by instrument in the form of a quitclaim deed all his rights, powers, and interest, with reference to the parks, beaches, clubhouse, streets, and other buildings and places as set forth in the excerpt from the deeds to lot owners, above quoted. Said corporation was organized for a period of 30 years, said period expiring in 1959. From the time of the assignment to it by Mr. Golden until the entry of decree in circuit court in the instant suit it apparently exercised the power that had been reserved to the grantor in the conveyances of the lots. What specific improvements were made does not appear but the trial judge found from the evidence introduced on the hearing before him that the aggregate value of the property in which the lot owners had a common interest was approximately $215,000.

The corporate life of the corporation was permitted to end without any attempt to extend it. Thereafter, however, an attempt was made to accomplish such extension. An election by the lot owners, all of whom were members of the corporation, was held, at which 641 votes were cast. Five hundred two favored extending the corporate life, 132 were negative, and 7 ballots could not be counted. The action being taken after the expiration of the prescribed corporate period, 4/5 vote was requisite. CLS 1956, § 450.62 (Stat Ann 1961 Cum Supp

§ 21.62). The attempted extension having failed, a new corporation, the plaintiff New Beach Association, Incorporated, was formed for the purpose of functioning, if duly authorized, in the exercise of the powers vested in defendant Woodland Beach.

In order to obtain requisite authority in the accomplishment of the desired procedure, the instant suit was instituted in the circuit court of Monroe county. Plaintiff Ellenwood was described in the bill of complaint as a part owner of a lot in Woodland Beach subdivision. It further appears from the pleading that the membership in New Beach Association, Incorporated, comprises the owners of lots, or of an interest therein, in the subdivision. The bill of complaint, after reciting the factual situation existing at the time, sought equitable relief in the form of a decree designating New Beach Association, Incorporated, as successor to defendant Woodland Beach and authorized as such to exercise the original rights and perform the obligations of the first corporation formed by the lot owners. On the filing of the bill of complaint an order was issued requiring defendant corporation and all persons having interests in lots in Woodland Beach subdivision to show cause why the relief sought should not be granted. A copy of the order was required to be published in a newspaper once each week for 2 successive weeks, and copies posted in 3 conspicuous public places in Woodland Beach subdivision not less than 15 days before the date of hearing on the show cause order. Notice was given as directed.

The opinion of the trial judge in the case indicates that the hearing was attended by many of the interested parties. Petition to intervene on behalf of appellant Edmondson was filed and granted. It does not appear that other lot owners undertook to oppose the granting of the relief sought by plaintiffs. The intervenor filed answer to the bill of complaint

denying the jurisdiction of the court to grant the relief sought and asserting, by subsequent amendment, that the conditions, restrictions and reservations as contained in the deeds executed by the original grantor Oliver J. Golden, and particularly the provisions for assessment with a lien therefor on lots, were repugnant to the rule against perpetuities, and undertook to "suspend the absolute power of alienation and restrain alienation for longer than the statutory period."

Following a hearing on the issues raised by the pleadings in the cause, the trial judge came to the conclusion that the situation was such that equity should grant relief, that protection of the property rights and privileges in the property dedicated in common to the lot owners required the maintenance of the system provided in the original deeds, and that without such protection the value of all the lots in the subdivision would be depreciated by approximately 1/3. A decree was entered in accordance with the findings of the court, granting the relief sought by the plaintiffs, and designating New Beach Association, Incorporated, as successor to defendant Woodland Beach. From such decree intervenor has appealed, presenting substantially the same arguments that were advanced in her behalf in circuit court.

Involved in the controversy is a determination of the exact effect of the reservation made by Oliver J. Golden, or by his successor, in the deeds to the lots in the subdivision, all of which were eventually sold. It will be noted that the grantor did not reserve title in himself to the parks, clubhouses, streets, and other buildings and places within the subdivision the use and enjoyment of which was granted to the lot owners. Any such attempted reservation would have been at variance with the dedication referred to in each deed as having been

made by the recorded plat. Rather, Mr. Golden, evidently with the purpose in mind of insuring for the benefit of all concerned the proper improvement and general betterment of the subdivision, reserved the right to "control" such improvements. By acceptance of the deeds the lot owners indicated their consent to such reservation. To the accomplishment of the purpose of the grantor it was agreed that each lot should be chargeable with the payment of $10 per year, with special assessments for pavements.

It was apparently contemplated from the outset that an association should be formed by the lot owners to take over the "rights, powers and interests" reserved to Mr. Golden, and Woodland Beach was incorporated in accordance with that understanding. The fact that the subdivider transferred to Woodland Beach by instrument in the form of a quitclaim has no controlling significance. Mr. Golden could not transfer title to property that he did not own. He could and did assign the right of control vested in him by virtue of the deeds of conveyance, the acceptance of which bound the lot owners in accordance with the specific terms thereof. It may be assumed that Mr. Golden considered that he was acting in a trust capacity and that he owed specific duties to the lot owners in the exercise of the right of control of improvements of the dedicated common property of the lot owners. Quite possibly he viewed his authority as analogous to a power in trust. In his assignment to Woodland Beach he designated himself as "trustee", indicating his conception of the nature of his relation to the subdivision and the lot owners. In any event, it is obvious that he was not the owner, or vested with the legal title, of the property interests which he had dedicated by the plat of the subdivision to the lot owners in common, the interest of each being appurtenant to his lot and subject to conveyance by him accordingly. It will

be noted that under the arrangement made the improvements were paid for by the lot owners. The reserved power of control on the part of Mr. Golden so contemplated, and the plan was obviously a reasonable one for the reason that each lot owner was in effect contributing to the benefit of his own property.

In construing the provisions of the deeds to lot owners, out of which the present controversy has arisen, we must give to the language used its customary meaning. It is fair to assume that the grantor did not intend to reserve in himself title to any property dedicated by the plat to the lot owners, or subsequently to be acquired by their payments. Had he intended a reservation of title, unquestionably he would have said so, but it must be considered that he had in mind the dedication referred to in the deeds, that he considered that the purpose to be accomplished might be carried out by the reservation of the power of control specifically described, and that, as clearly indicated, he contemplated the transfer of that power to some sort of an organization or association to be subsequently formed by the lot owners. That plan was carried out and has been in force and effect for many years without being questioned. Defendant Woodland Beach was vested with no greater rights, authority or interest, than was Mr. Golden. It merely exercised a right of control as consented to by the lot owners.

A proper interpretation of the language used in the deeds to lot owners obviates the principal objections urged on behalf of appellant. Concededly each lot owner may convey his lot with incidental appurtenant property rights. Such owner is, of course, subject to the exercise of the power of control created by agreement of the parties, and any purchaser of a lot is likewise subject thereto. There is, however, no restraint on the power of alienation

·or any violation of the claimed rule against per-
petuities.

This brings us to the question as to the right of
the court of equity to grant relief in view of the
unusual situation involved. If the lot owners in
whose behalf the suit is ostensibly instituted are
denied the right to continue the system that has
been in operation for over 30 years, they will be
prejudicially affected in their property rights. The
record before us clearly suggests that the method of
making improvements as contemplated by Oliver J.
Golden has resulted to the general advantage of
the subdivision. It was contemplated that the power
originally vested in the grantor would be transferred
to an association made up of the lot owners, and
such plan was carried out. Plaintiffs now seek to
continue that plan, and as the trial judge aptly
suggested in his opinion no alternative method has
been proposed.

It is perhaps unfortunate that the life of the first
association of lot owners was not extended before
the expiration of the term for which that corpora-
tion was formed. The plaintiff New Beach Asso-
·ciation, Incorporated, has admittedly been organized
as a successor. We think that plaintiffs were en-
titled under the circumstances to invoke the aid of
a court of equity to the end that the method of pro-
·cedure in the making of improvements for the bene-
fit of all property and property owners in the sub-
·division may be continued, at least until such time
as the lot owners, exercising their authority as mem-
bers of the new corporation, have modified or
changed the arrangement previously existing.

Insofar as the instant case is concerned, it clearly
appears that no lot owner desiring to intervene was
·denied the right to do so. Apparently, with the ex-
·ception of appellant, they were satisfied to be rep-
·resented by the plaintiffs. The general rule as to

the propriety of class suits in a situation of this nature was considered in *Dipboye* v. *Acchione,* 351 Mich 550. We conclude also that the granting of appropriate relief under the circumstances here involved is within the inherent power of equity. It is, we believe, apparent that the original grantor of the lots in the subdivision in reserving the power of control with reference to improvements in the common facilities owned by the lot owners considered that he was creating a relation between himself and the grantees under the deeds in which reliance was placed on his performing the obligations assumed by him in a trustworthy manner. The like obligation existed on the part of his assignee Woodland Beach. That corporation not being able to act further in the premises, the situation presented is somewhat analogous to that where a trustee becomes incapable of further performance, in which event a court of equity may without question appoint a successor. *Penny* v. *Croul,* 76 Mich 471 (5 LRA 858); *Gifford* v. *First National Bank of Menominee,* 285 Mich 58; *Rudell* v. *Union Guardian Trust Co.,* 295 Mich 157, and prior decisions there cited. The trial court was not in error in assuming jurisdiction of the controversy.

The decree of the trial court appointed plaintiff New Beach Association, Incorporated, as successor to Woodland Beach, as prayed by plaintiffs, and designated that it should have the right "to fully control the parks, clubhouses, streets, and other buildings and places within Woodland Beach Subdivision; the use and enjoyment of which is conferred in common to all persons having ownership in lots in this subdivision." Such provision appears to be in keeping with the language of the deeds as executed by the original owner of the subdivision. The decree further provides, however, that New Beach Association, Incorporated, is vested with the

ownership in fee of the parks, et cetera, located within the plat. Such provision is not within the purview of the right of control reserved in the deeds to the lot owners, nor is the provision that New Beach Association, Incorporated, shall be vested with ownership of all personal assets of defendant Woodland Beach. As before stated, the original agreement between the subdivider and lot purchasers as evidenced by the provisions of the deeds did not contemplate the ownership of property but, rather, a right of control thereof for purposes of improving the subdivision. Defendant Woodland Beach should be directed by the decree to transfer its rights, powers, and interests, in and over the said property. The decree, in other words, should follow in its provisions the language of the deeds.

The case is remanded to the circuit court for amendment of the decree in the particulars mentioned. So amended, the decree will be affirmed, without costs.

DETHMERS, KELLY, BLACK, KAVANAGH, SOURIS, OTIS M. SMITH, and ADAMS, JJ., concurred.