ST JOHN'S–ST LUKE EVANGELICAL CHURCH, UNITED
CHURCH OF CHRIST v NATIONAL BANK OF DETROIT

Docket No. 78-2178. Submitted April 11, 1979, at Detroit.—Decided
August 20, 1979.

St. John's Church was named the beneficiary of a trust created by
William and Mary Pagel. The trust provided that 10% of the
excess net income of the trust was to be paid to St. John's
Church. National Bank of Detroit was the trustee of the trust.
William died in 1947 and Mary died in 1964. From 1965 to
1970 the trustee made the designated payments. In 1971, the
trustee ceased payments for the stated reasons that the church
had only 200 members, the distribution would equal $60 per
member and the moneys would be used substantially for main-
tenance of the church according to the then minister. St.
John's–St. Luke Evangelical Church, United Church of Christ,
successor by merger to St. John's Church, filed a complaint in
Wayne Circuit Court alleging that it was entitled to 10% of the
trust income by operation of the trust instrument and that the
trustee had abused its discretion in discontinuing annual pay-
ments. The Attorney General was made a party to the suit.
Defendants, trustee and Attorney General, denied that St.
John's was granted a definite interest in the trust income and
because the trust agreement did not grant St. John's a definite
interest St. John's did not have standing to sue. Defendants
also contended that only the Attorney General could sue to
enforce a charitable trust where the beneficiary was uncertain
and indefinite and the issue of whether plaintiff had standing
to sue had to be determined before trial on the merits. Wayne
Circuit Court, Carl F. Ingraham, J., determined that the
trustee had the sole power and discretion to dispose of the trust
income and property and was not limited to the specific recipi-
ents named and that the beneficiaries were uncertain and

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Summary Judgment § 29.
[2] 59 Am Jur 2d, Parties §§ 26-28.
[3] 76 Am Jur 2d, Trusts § 135.
[4, 5, 7, 8] 15 Am Jur 2d, Charities §§ 143-145.
[6] 15 Am Jur 2d, Charities § 6.

indefinite and, therefore, the Attorney General had exclusive authority to sue to enforce the charitable trust. The court concluded that plaintiff was not a proper party and lacked standing to obtain judicial determination of the validity of the trustee's action. Plaintiff's case was dismissed with prejudice. Plaintiff appeals. Judge Ingraham's dismissal is treated on appeal as a grant of summary judgment. The question presented is whether the trust instrument grants plaintiff a sufficient interest in the trust income so as to give it standing to sue to enforce the trust. *Held:*

1. Plaintiff has standing to sue for enforcement of the trust provision. The applicable rule is that beneficiaries must be certain and definite to maintain an action to enforce a trust. Plaintiff is a certain, definite and particular beneficiary having been named and identified in the trust instrument with a suggested specific amount of 10% of the excess income to be paid by the trustee.

2. A trust beneficiary having a primary and special interest in trust income, with a claim that the trustee abused its discretion, is entitled to at least minimal judicial review concerning whether termination of payments by the trustee constituted an abuse of discretion under the trust instrument. The right to judicial review cannot be foreclosed by an argument that plaintiff has no standing to sue, and consequently to appeal, because its interest is uncertain and indefinite where the trustee has broad discretion to determine who will be the recipients of trust corpus and income.

3. Generally, a suit may be maintained for enforcement of a charitable trust by the Attorney General where the beneficiaries are uncertain and indefinite or by a person who has a special interest. Therefore, the Attorney General is not the only party who can, in all situations, sue to enforce a charitable trust. Plaintiff has standing to sue to enforce the trust because it is named, identified and has a special interest in the trust property.

4. Summary judgment for the defendants on the basis that plaintiff lacked standing to sue was erroneous. Plaintiff could sue to enforce the trust. Whether the exercise of discretion was in keeping with the purposes and intentions of Mr. and Mrs. Pagel and whether it constituted an abuse of discretion appears to be a question of fact for determination after a full trial on the merits.

Reversed and remanded.

1. JUDGMENT — SUMMARY JUDGMENT — REVIEW — COURT RULES.

The Court of Appeals should take a plaintiff's well-pleaded allegations and any fair inferences therefrom as true for the purpose of measuring whether a grant of summary judgment because of the plaintiff's failure to state a claim upon which relief could be granted was proper (GCR 1963, 117.2[1]).

2. ACTION — SUBSTANTIAL INTEREST — STANDING TO SUE.

Only those who have a substantial interest have standing and will be allowed to come into court to complain.

3. TRUSTS — BENEFICIARIES — STANDING TO SUE — CERTAIN AND DEFINITE IDENTIFICATION.

Beneficiaries under a trust must be certain and definite before they may be allowed to bring an action against a trustee for benefits; there is no lack of standing to sue where a plaintiff church is specifically named and identified in a trust instrument and where a trust provision suggests that a specific amount of excess trust income be paid to the church as a beneficiary of the trust.

4. TRUSTS — BENEFICIARIES — TRUSTEES — DISCRETION — APPEAL AND ERROR.

A church, with a primary special interest in a trust and as a certain and definite beneficiary of the trust, is entitled to judicial review as to whether termination of payments to it by the trustee constituted an abuse of discretion under the trust instrument.

5. TRUSTS — CHARITABLE TRUSTS — SPECIAL INTERESTS — ATTORNEY GENERAL.

Generally, a suit may be maintained for enforcement of a charitable trust by the Attorney General, or by a co-trustee, or by a person who has a special interest in the enforcement of the charitable trust, but not by persons who have no special interest, or by the settlor, his heirs, personal representatives, or next of kin.

6. TRUSTS — CHARITABLE TRUSTS — DEFINITIONS — STATUTES.

The Supervision of Trustees for Charitable Purposes Act defines a charitable trust to mean a relationship where a trustee holds property for a charitable purpose (MCL 14.252b; MSA 26.1200[2][b]).

7. TRUSTS — CHARITABLE TRUSTS — ATTORNEY GENERAL — BENEFICIARIES — STANDING TO ENFORCE — SPECIAL INTERESTS — STATUTES.

The statutory provision directing the Attorney General to repre-

sent uncertain and indefinite beneficiaries in all charitable trusts does not preclude a beneficiary from suing to enforce a charitable trust where the beneficiary is named, identified and has a special interest in the trust property (MCL 14.254; MSA 26.1200[4]).

8. TRUSTS — CHARITABLE TRUSTS — ATTORNEY GENERAL — ENFORCE-
MENT OF TRUST.
   The Attorney General is not the only party who can, in all situations, sue to enforce a charitable trust.

*McInally, Brucker, Newcombe, Wilke & DeBona, P.C.* (by *Chester C. Lawrence*), for plaintiff.

*Beaumont, Smith & Harris* (by *James E. Beall*), for National Bank of Detroit.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *J. Ronald Kaplansky,* Assistant Attorney General, for the State of Michigan.

Before: BEASLEY, P.J., and ALLEN and D. C. RILEY, JJ.

BEASLEY, P.J. Plaintiff, St. John's–St. Luke Evangelical Church, United Church of Christ, is the merged successor to St. John's Church which was founded in Detroit in 1833 and is reputed to be the oldest German congregation in Detroit. The church has been located at Gratiot and Russell Avenues since 1874.

The church was named in a 1944 trust created by William Pagel and Mary E. Pagel and received payments from defendant, National Bank of Detroit, the trustee, from 1965 through 1970. After payments ceased, plaintiff church started an equitable action against the trustee in 1974, joining the Attorney General as a party defendant. Eventually, in 1978, a visiting judge granted the motion

of defendant trustee for summary judgment under GCR 1963, 117.2(1), holding that plaintiff had no standing to bring suit. From that summary judgment, plaintiff appeals as of right.

The relevant provisions of the trust provide:

[Preamble:]

"WHEREAS, the Settlors desire to create a trust, to be known as the WILLIAM AND MARY PAGEL TRUST, the purposes of which are to provide income for the Settlors during their lives; to make provision for certain relatives and to provide support and maintenance for various religious and charitable institutions; and

\* \* \*

[Section 5]

"5. After the death of Mary E. Pagel the Trustee shall pay all excess net income not required to be paid to individuals hereunder, to the religious and charitable institutions or organizations hereinafter named or referred to, as hereinafter provided.

"(a) Settlors have contributed to and have an especial interest in the religious and charitable organizations hereinafter named.

"The care, treatment and benefits given to crippled children, handicapped and aged persons, and also the religious teachings and influence of these and other similar organizations are worthy of encouragement and support in the opinion of Settlors.

"The Trustee shall have the sole and uncontrolled power and discretion with respect to the time, manner and amount of all payments or distributions both of any available net income hereunder or the trust property itself held by it, to and among the religious, charitable and benevolent organizations or uses provided for herein.

"Subject to the exercise by Trustee of its sole discretion, Settlors hereby suggest (unless and until any change therein is determined by the Trustee to be prudent or essential to the purposes and intentions of Settlors as expressed herein), that such available net

income or the trust property held by it, be paid and distributed according to the percentages and among the organizations as follows:

"1. 25% to German Protestant Home for Orphans and Old People, of Detroit, Michigan.

"2. 25% to Hospitals for Crippled Children as established and maintained by the Imperial Council, Ancient Arabic Order of the Nobles of the Mystic Shrine of North America, and the Shriners' Fund of Moslem Temple Association, a Michigan corporation, for the use and benefit of said hospitals.

"3. 10% to Grace Episcopal Church of Detroit, Michigan.

"4. *10% to St. John's Evangelical and Reformed Church of Detroit, Michigan.*

"5. 10% to Detroit Tuberculosis Society.

"6. 10% to Detroit League for the Handicapped, Inc., of Detroit, Michigan-particularly its work for the blind.

"7. 5% to Detroit Orthopedic Clinic.

"8. 5% to George William Graves Memorial Christmas Fund for the Masonic Home at Alma, Michigan.

[Section 6]

"6. After the death of all annuitants named herein the Trustee shall have the sole power and discretion to make payments or distributions of corpus to any religious or charitable institution organized for purposes similar to rather than those named herein or to maintain, improve, enlarge or replace the facilities or equipment of such others or of those named above.

\*   \*   \*

[Section 8]

"8. This trust shall continue until the death of the last survivor among the nieces and nephews herein named of Mary E. Pagel, Settlor, and the last survivor among the nieces and nephew herein named of William M. Pagel, Settlor, when the right to receive income by any individual named herein shall cease, and thereafter it shall be and become a trust solely for religious, charitable and benevolent uses and continue as such in the hands of the Trustee or until terminated by the

Trustee in accordance with the terms and conditions hereof.

"If and when this trust becomes one solely for religious, charitable and benevolent uses and purposes, the Trustee may and is hereby given authority in its sole discretion to incorporate the same by the formation of a perpetual Michigan non-profit corporation, the name of which shall be 'MARY E. PAGEL FUND,' with not less than three members, three trustees and such officers as may be designated and elected by them to carry out the religious, charitable and benevolent purposes specified by this trust." (Emphasis added.)[1]

William Pagel died in 1947 and Mary Pagel died in 1964 at age 82. The record indicates defendant, National Bank of Detroit, as trustee under the William and Mary Pagel Trust, paid 10% of the net income of the trust to plaintiff, St. John's Church, from 1965, the year following Mary Pagel's death, through 1970.

In 1971, the trustee ceased paying any of the trust income to St. John's for the following announced reasons: (1) the church had only 200 members; (2) the distribution would equal $60 per member; and (3) the moneys were to be used, as represented by the then minister of the church, substantially for maintenance of the church.

The following procedural events then ensued:

(1) In 1974, plaintiff filed a complaint alleging that it was entitled to 10% of the trust income by operation of the trust instrument and that the trustee had abused its discretion by discontinuing annual payments to the church. The Attorney General was made a party defendant to the suit pursuant to MCL 14.251 *et seq.;* MSA 26.1200(1) *et seq.*

(2) In answering the complaint, both defendants,

---

[1] Ninth amendment of William and Mary Pagel Trust.

the trustee and the Attorney General, denied that St. John's was granted a definite interest in the trust income. The trustee filed an answer to plaintiff's order to show cause[2] on the same day it filed its answer to the plaintiff's complaint. In this answer, the trustee specifically alleged that St. John's did not have standing to sue for an accounting because the trust agreement did not grant St. John's a definite interest.

(3) The defendant trustee filed a motion for summary judgment and brief in support of the motion, which alleged that St. John's failed to state a claim.[3] In the brief and motion, the trustee argued that the Attorney General was the only proper party to seek enforcement of the trust.

(4) Plaintiff amended its complaint pursuant to the court's opinion of October 24, 1974, alleging abuse of discretion and/or bad faith on the part of defendant trustee. The trustee renewed its motion for summary judgment.

(5) The trustee's renewed motion for summary judgment was denied in the court's written opinion of April 17, 1975, stating that the sole issue to be litigated was whether or not the trustee had abused its discretion when it failed to distribute funds to St. John's.

(6) After conclusion of the pretrial conference, the court again ruled that the only issue to be litigated was whether or not the trustee had abused its discretion. However, the pretrial sum-

---

[2] Plaintiff prepared an "Order Directing Defendant National Bank of Detroit, As Trustee of the William and Mary Pagel Trust, To Show Cause Why It Should Not Make A Full and Complete Detailed Accounting Commencing The Year 1964 With Respect To Said Trust".

[3] GCR 1963, 117.2(1). On October 24, 1974, the trial court (Judge Farmer) denied this motion "without prejudice" in a written opinion which recited the trustee could not abuse its discretion. The subsequent opinion on renewed motion for summary judgment and the pretrial conference were also the work of Judge Farmer.

mary stated that any properly pleaded defense was not waived.

(7) Trial was set for May 8, 1978, before a visiting judge assigned to hear the case. In their trial briefs, the trustee and the Attorney General argued that, pursuant to MCL 14.256; MSA 26.1200(6) and MCL 554.351; MSA 26.1191, only the Attorney General could sue to enforce the trust. On the day set for trial, defendant trustee argued, and the trial court agreed, that in light of the then recent ruling in *Oleksy v Sisters of Mercy of Lansing, Michigan,*[4] the issue of whether plaintiff had standing to sue must be determined before trial on the merits as to whether or not the trustee had abused its discretion[5] would be heard. In determining whether plaintiff had standing, the trial court heard testimony concerning the circumstances surrounding the creation of the trust which would be relevant to the settlors' intentions. That evidence indicated that the Pagel family had been associated with St. John's since the early 1900's. In the early years, St. John's was a prosperous church serving the German community. The minute books of St. John's indicated that Mr. and Mrs. Pagel contributed generously to the church from 1936 to 1946. By World War II, much of the congregation moved away and the area surrounding the church became one of Detroit's first slums. By 1946, the city had plans to rede-

---

[4] 74 Mich App 374; 253 NW2d 772 (1977).

[5] It is not altogether clear whether the trial judge believed he was rehearing defendant bank's original motion for summary judgment under GCR 1963, 117.2(1) in the light of *Oleksy v Sisters of Mercy of Lansing Michigan, supra,* or whether he was hearing an oral motion for accelerated judgment, or whether he considered trial had commenced and that he was first hearing proofs regarding the "standing" issue. The fact that he called his disposition "dismissal with prejudice" when, in fact, there had been only a partial trial, seems to indicate a grant of the motion for summary judgment under GCR 1963, 117.2(1).

velop the area, and most of the land near St. John's was cleared. The last amendment to the trust, the ninth amendment, was made in 1956 by Mrs. Pagel, after Mr. Pagel's death in 1947. When the ninth amendment was drafted, Mrs. Pagel was aware of the condition of the area surrounding the church. As indicated, she died in 1964. The trustee paid part of the trust income to St. John's in 1965 through 1970.

(8) The trial judge, visiting Judge Ingraham, acknowledged that previously Judge Farmer had denied defendants' motions for summary judgment which had been made partly on the basis that plaintiff lacked "standing" to sue the trustee and that Judge Farmer had indicated he believed the "sole issue was whether the trustee abused its discretion in terminating payments to plaintiff".

(9) It should be noted that the trial judge heard only testimony regarding the "standing" issue; there was no full trial on the merits.

(10) Judge Ingraham then reviewed the trust instruments and determined that the trustee had the sole power and discretion to dispose of the trust income and property and was not limited to the "specific recipients" named. He concluded that the beneficiaries were uncertain and indefinite and that, therefore, under *Oleksy, supra,* the Attorney General had exclusive authority to sue to enforce the charitable trusts. Noting that the Attorney General had intervened and filed a brief supporting the trustee, which brief indicated defendant Attorney General did not believe defendant trustee had abused its discretion, the trial judge decided plaintiff was not a proper party under the *Oleksy* case and lacked standing to obtain a judicial determination of the validity of the trustee's action in terminating payments to plaintiff church.

Based on these findings, the trial court dismissed plaintiff's suit with prejudice.

In view of the posture of the record, we appear to have no procedural alternative other than to treat the dismissal as being a rehearing of defendant bank's motion for summary judgment under GCR 1963, 117.2(1) and an award of summary judgment in the nature of a motion to dismiss. This means that we must take plaintiff's well-pleaded allegations and any fair inferences arising therefrom as true, for the purpose of measuring whether the grant of summary judgment was proper.

This ruling of the trial court forms the basis of the two issues plaintiff poses on appeal. First, under the procedural posture of this case, did the defendants waive their right to object to the plaintiff's lack of standing to sue, and second, if they did not, does the trust instrument grant St. John's Church a sufficient interest in the trust income so as to vest them with standing to sue to enforce the trust? Because of our disposition of the second issue, resolution of the first becomes unnecessary.

The injection of the "standing to sue" concept is confusing in the context of the disposition by summary judgment on the facts of this case. However, the trial judge having chosen to grant the motion, our function is now to determine the correctness of the ruling that standing did not exist.

In *White Lake Improvement Ass'n v City of Whitehall*,[6] this Court discussed the issue of standing and said:

"The purpose of the rules of law which limit the persons who may maintain an action for the abatement

_____

[6] 22 Mich App 262, 273; 177 NW2d 473 (1970).

*of* a nuisance is similar to a purpose of *standing* requirements generally, namely, to insure that only those who have a substantial interest will be allowed to come into court to complain." (Emphasis added; footnote omitted.)

In *Flast v Cohen*,[7] the United States Supreme Court said:

"Standing is an aspect of justiciability and, as such, the problem of standing is surrounded by the same complexities and vagaries that inhere in justiciability. Standing has been called one of 'the most amorphous [concepts] in the entire domain of public law.' Some of the complexities peculiar to standing problems result because standing 'serves, on occasion, as a shorthand expression for all the various elements of justiciability.' In addition, there are at work in the standing doctrine the many subtle pressures which tend to cause policy considerations to blend into constitutional limitations. * * *

"The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' * * * In other words, when standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable." (Citation omitted.)

In *Morse v Liquor Control Commission*,[8] the Supreme Court held that plaintiffs who were members of churches seeking to raise the 500-feet-from-a-liquor-establishment rule had sufficient *standing* to litigate the issue even though the plaintiffs

---

[7] 392 US 83, 98-100; 88 S Ct 1942; 20 L Ed 2d 947 (1968).

[8] 319 Mich 52; 29 NW2d 316 (1947).

themselves did not own property located within 500 feet of the churches.

In the Federal cases, when a party shows such a personal stake in a controversy so as to assure a "concrete adverseness" in which issues will be litigated, then standing attaches. The more recent cases seem to indicate that if the challenged action causes a plaintiff injury in fact, economic or otherwise, and the interests asserted by the plaintiff are "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question, then there is standing".[9]

Admittedly, most of the Federal cases seem to involve either challenges to administrative action or cases where taxpayers attempt to challenge Federal action. One of the justifications given by courts for the existence of standing is the prevention of suits that are collusive or friendly or merely seek advisory opinions. The tendency in the Federal courts has been to substantially liberalize the concept of standing so as to greatly reduce standing as a bar to litigation. Some commentators would carry this tendency so far as to assert that there is a presumption in favor of according standing to a plaintiff.

Consequently, applying these concepts of standing to sue to the within action, it seems evident that plaintiff church has standing to sue. In the first place, plaintiff church is specifically named and identified in the trust instrument. Therefore, in the sense that the "uncertain and indefinite" test means identification of a particular beneficiary, there could be no question but that plaintiff church would meet such a test. In addition, the

---

[9] *Ass'n of Data Processing Service Organizations, Inc v Camp,* 397 US 150; 90 S Ct 827; 25 L Ed 2d 184 (1970), and *Barlow v Collins,* 397 US 159; 90 S Ct 832; 25 L Ed 2d 192 (1970). See, 69 Mich L Rev 540, 551 (1971), for discussion of Federal test for standing.

trust instrument suggests a specific amount, namely, 10% of the excess income as payment to plaintiff church. It would seem reasonable to conclude that application of the "uncertain and indefinite" test does not reveal a lack of standing insofar as the amount to be paid this potential beneficiary is concerned.

The trustee argues that because it has a broad discretion to determine *who* will be recipients of trust corpus and trust income and how much the amount of such benefits will be, the interest of plaintiff church is uncertain and indefinite. The difficulty with this argument is that it deprives plaintiff church, the party with the primary, special interest, of judicial review of the claim that defendant trustee abused its discretion. We incline to believe that plaintiff church is entitled to some kind of minimal review as to whether termination of payments by the trustee constituted an abuse of discretion under the trust instrument.

However, while both the trial court and defendants, trustee and Attorney General, couch their arguments in the language of standing to sue, defendant trustee and defendant Attorney General also argue that the statute empowering the Attorney General with jurisdiction and control to represent uncertain or indefinite beneficiaries precludes the bringing of this suit by plaintiff church. The language of the statute does not support any such sweeping conclusion that the Attorney General is the *exclusive* repository of such power.

In general, a suit can be maintained for enforcement of a charitable trust by the Attorney General, or by a co-trustee, or by a person who has a special interest in the enforcement of the charitable trust, but not by persons who have no special

interest, or by the settlor, his heirs, personal representatives, or next of kin.[10]

Section 2[11] of the 1961 Supervision of Trustees for Charitable Purposes Act defines a charitable trust to mean the relationship where a trustee holds property for a charitable purpose. We hold the Pagel trust to be a charitable trust under this statutory definition.

Section 4 of the above cited Supervision of Trustees for Charitable Purposes Act provides:

"The attorney general shall have jurisdiction and control and shall represent the people of the state and the uncertain or indefinite beneficiaries in all charitable trusts in this state, and may enforce such trusts by proper proceedings in the courts of this state."[12]

We find no inconsistency between the statutory provision directing the Attorney General to represent "uncertain and indefinite" beneficiaries and the general rule of law authorizing a person with a "special interest" to sue to enforce a charitable trust.

As indicated, in the within case, the trust instrument specifically named and identified St. John's Church as a potential beneficiary and, in addition, spelled out the suggested amount, namely, 10% of "such available net income or trust property".

Also, we are aware that the trust instrument vests in the trustee broad discretion "with respect to the time, manner and amount of all payments or distributions". The trust instrument provides, among other things, that:

[10] Restatement Trusts 2d, § 391, pp 278-280, particularly, see "Person Having a Special Interest".

[11] MCL 14.252(b); MSA 26.1200(2)(b).

[12] MCL 14.254; MSA 26.1200(4).

"Subject to the exercise by Trustee of its sole discretion, Settlors hereby suggest *(unless and until any change therein is determined by the Trustee to be prudent or essential to the purposes and intentions of Settlors as expressed herein),* that such available net income or the trust property held by it, be paid and distributed according to the percentages and among the organizations as follows: * * *." (Emphasis added.)

Whether exercise of discretion under the above quoted portion constitutes an abuse of discretion in this case appears to be a question of fact for determination after full trial on the merits. Determination of such an issue on a motion for summary judgment under GCR 1963, 117.2(1) would be inappropriate and erroneous.

Defendant bank also argues that as a result of MCL 14.254; MSA 26.1200(4), only the Attorney General can raise this issue. In the within case, defendant Attorney General has filed a brief, but did not join in the motion for summary judgment or make oral argument on appeal. In his brief on appeal, the Attorney General argues plaintiff has no standing to sue, plaintiff has no special interest, plaintiff's interest in the Pagel trust is uncertain and indefinite and that other trial court decisions affecting other possible charitable beneficiaries of the Pagel trust support these conclusions.

Since defendant Attorney General does not intend to seek judicial review of the trustee's decision to terminate payments to plaintiff church, the effect of defendant Attorney General's position is to deprive plaintiff church of any judicial review. As we have indicated, we do not believe that, under the facts of this case, the statutes were intended to be so interpreted.

The trial court based its grant of summary judgment on *Oleksy v Sisters of Mercy of Lansing*

*Michigan, supra.* In *Oleksy,* a doctor brought suit on behalf of himself and other contributors to the building fund of Mercy Hospital to enjoin the sale of the hospital located in Jackson, Michigan, to another hospital, claiming that the second hospital would not be operated in a "Christian atmosphere under a pro-life philosophy". The Jackson County prosecutor attempted to intervene, but his motion was denied. The case was then dismissed on the ground that plaintiffs lacked standing to bring the action. The prosecutor then brought his own action in *quo warranto* to enjoin the sale, which action was also dismissed on motion. On appeal, this Court held that the defendant, Sisters of Mercy, a nonprofit corporation, held the hospital in trust for the benefit of the people of Jackson who contributed time, talent, money and services. The Court concluded that, under these circumstances, in Michigan the Attorney General has exclusive authority to enforce a charitable trust. Further, the Court found that "the Attorney General, instead of local prosecuting attorney, must represent the beneficiaries of a trust" where they are uncertain or indefinite because the statute required it.

This case substantially differs from *Oleksy.* The doctor in *Oleksy* made a contribution to a hospital building fund and claimed he also gave of his time and talent. This is some distance removed from the situation of plaintiff church, which was named in the trust instrument, for which a suggested percentage share of income was stated in the trust instrument and which received a share of trust income for over five years.

The *Oleksy* Court said that the policy reason for their holding was that allowing litigation by private citizens in the context of that case would be

vexatious and burdensome. Suit by plaintiff church in this case cannot be described as vexatious and burdensome in the *Oleksy* sense. On the contrary, as a named party in the trust instrument and as an over five-year beneficiary of the trust, plaintiff church's effort to obtain judicial review of the correctness of the trustee's action appears to be a reasonable endeavor to which plaintiff is entitled.

We do not read the statute as depriving all named trust beneficiaries from bringing suit regarding entitlement to benefits, meaning of trust language, or improper administration of trust properties. In short, we decline to hold that *Oleksy* controls here so as to deprive plaintiff church from bringing suit. Plaintiff's remedy was not limited to a request to the Attorney General to seek interpretation of the meaning of the trust language and review of the trustee's terminating payments to plaintiff church. The Attorney General is *not* the only party who can, in all situations, sue to enforce a charitable trust.[13]

In summary, we set aside the judgment in favor of defendant and remand to the trial court for full trial on the merits. We do so because, on this record, it was erroneous to award summary judgment to defendants under GCR 1963, 117.2(1) on the basis that plaintiff lacked standing to sue. Our review indicates there may be ambiguities in the language of the trust instrument. If so, the parties should be given full opportunity to offer evidence regarding these conflicting meanings as well as an

---

[13] See, *In re Reeder Estate*, 380 Mich 655; 158 NW2d 451 (1968), where the Court concluded that a settlement which left the residue of a trust to one party in a will contest where the other party was a charitable trust was valid in the absence of participation by the Attorney General. The Court found § 1 of the charitable trust statute applied the act only to a will or devise that did not name any person or corporation as donee.

opportunity to advocate all possible theories re-garding the settlors' intentions. We express no opinion as to the eventual outcome after full trial.

Reversed and remanded.