207 Mich. App. 194 (1994)
In re ESTES ESTATE.
CENTRAL UNITED METHODIST CHURCH
v.
ESTES-PALMER FOUNDATION
Docket No. 148453.
Michigan Court of Appeals.
Submitted April 13, 1994, at Lansing.
Decided October 3, 1994, at 9:45 A.M.
Hubbard, Fox, Thomas, White & Bengtson, P.C. (by Michael G. Woodworth) (Allison K. Thomas, of Counsel), for Central United Methodist Church.
Glassen, Rhead, McLean, Campbell & Bergamini (by R.F. Rhead), for the Estes-Palmer Foundation.
*197 Before: HOLBROOK, JR., P.J., and REILLY and G.W. HOOD,[*] JJ.
HOLBROOK, JR., P.J.
The Estes-Palmer Foundation (the Foundation) appeals as of right from the Ingham County Probate Court's order granting Central United Methodist Church's (CUMC) petition, brought pursuant to the Uniform Management of Institutional Funds Act (UMIFA), MCL 451.1201 et seq.; MSA 26.1199(1) et seq., for partial release from a restriction in a charitable trust created by the will of Mame Estes. CUMC cross appeals the probate court's earlier order denying its motion for summary disposition.
In 1970, Mame Estes executed her last will and testament, which provided for several specific bequests, including the following bequest found in subsection j of the third paragraph:
My husband, Floyd, and I are owners as tenants by the entireties of our residence at 1608 Moores River Drive, Lansing, Michigan. If my said husband predeceases me, I direct my executors to be hereinafter named to sell said real estate and the carpeting and draperies therein and to deliver the proceeds of such sale to the Central United Methodist Church of Lansing, Michigan, which said sum of money shall be utilized by said church solely for the purpose of helping to build a new church and shall not be used for repair or additions to present church or for any other purpose; said money shall be deposited in the Union Savings & Loan Association of Lansing, Michigan and no principal or interest on said fund may be withdrawn except for the purpose of financial assistance in the building of said new church.
Estes devised the residue of her estate to the Foundation, a nonprofit organization, to administer *198 those funds for the benefit of her other charitable bequests.
Mame Estes died in October 1974 and, according to the terms of subsection j, $79,771 was delivered to CUMC'S board of trustees in 1975. Through careful investment, the value of the charitable trust accrued to approximately $300,000 in late 1991. Between 1988 and 1991, CUMC'S board of trustees requested the Foundation to authorize use of the trust funds for purposes other than building a new church, including the purchase of a pipe organ for installation in the church's historic sanctuary. The Foundation rejected the proposed uses and, in 1991, it petitioned the probate court to: (1) construe subsection j, (2) require that the trust funds be delivered to an independent trustee, and (3) require the trustee to file annual accountings. Thereafter, CUMC moved for summary disposition under MCR 2.116(C)(7) and (8) on the ground, among others, that the Foundation lacked standing to bring the petition. The Attorney General was notified of the petition but responded that he had been divested of jurisdiction pursuant to subsection 3a of the Supervision of Trustees for Charitable Purposes Act, MCL 14.251 et seq.; MSA 26.1200(1) et seq.
Following a hearing on the motion, the probate court held that construction of subsection j was unnecessary because it was "very, very clear on its face." The court further held that the Foundation had "limited standing" to enforce the terms of the trust to the extent that the funds be used for building a new church and that it was entitled to notice of any proceedings related to proposed uses of the funds. The court denied CUMC's motion for summary disposition, citing the need for a cy pres determination in the event that CUMC planned to *199 use the funds for a purpose other than building a new church.
CUMC thereafter filed a petition, pursuant to § 8 of the UMIFA, MCL 451.1208; MSA 26.1199(8), for release from the restriction in the trust. The petition stated that CUMC intended to use the accumulated and future earnings from the trust for the "Charitable and Religious purposes of CUMC, including, but not limited to, Christian Education and Youth Ministries, Community Ministries, and college scholarships for worthy students to attend such colleges as Adrian and Albion." It further stated that the principal of the trust would remain intact, "if for some unforseen reason a new Church would ever be needed or desirable."
At the petition hearing, various witnesses were called to testify on behalf of CUMC in support of the petition. It was established that the church, which is located in the shadow of the state capitol, is a valuable state landmark because it is one of the few remaining historic churches surrounding the capitol. The church, which was built in 1889 and designed by the same architect who designed the state capitol, is listed in the State Register of Historic Sites and the National Register of Historic Places. Since 1970, the church has undergone several renovations and repairs, including a major renovation in 1989 to prepare for the church's centennial celebration. A separate parsonage building located behind the church was demolished in 1971 to expand the parking area.
Further testimony established that it was highly unlikely that the church ever would be destroyed by fire, and that, even if it were, the church was covered by a full replacement-value insurance policy. It was also established that the Lansing area was adequately served by the existing Methodist churches and that the Methodist hierarchy would *200 not sanction the building of a new church. Various longtime members and officials of the church testified that the subject of building a new church had never been raised.
Witnesses who were personally acquainted with Floyd and Mame Estes testified that they were charitable people who were especially interested in Christian education.
On behalf of the Foundation, Harold Glassen, the attorney who drafted both Mame and Floyd Estes' wills, testified that at that time Mame Estes was bedridden but her mind was perfectly clear. Glassen went to the Esteses' home nearly a dozen times over a twelve- to fifteen-week period while drafting the will to ensure that it accurately reflected her specific wishes. Subsection j was incorporated into both Mame and Floyd Estes' wills to reflect their belief that someday either the church would be destroyed and need to be rebuilt at another site or it would be taken over by the state for expansion of state buildings. They also expressed concern that the church had insufficient parking to accommodate the growing congregation. She specifically asked Glassen "how long it [the bequest to CUMC] was good for," and both he and Floyd explained that it was for "an indefinite period... ten years or a hundred years." Mame Estes also understood, according to Glassen, that the bequest to CUMC was a relatively modest amount that would increase in value over the years.
At the close of proofs, the probate court found § 8 of the UMIFA to be controlling and concluded that the restriction was inappropriate because of certain changed circumstances that alleviated many of the concerns expressed by the Esteses. The court further found CUMC'S proposed purposes for using the funds to be reasonable, and released *201 the restriction to the extent of the accumulated and future earnings, but maintained the restriction with regard to the original principal, holding that it be held in perpetuity in the event that a new church is built.
The Foundation appealed as of right from the probate court's order of a partial release and CUMC cross appealed the court's order denying it summary disposition in the previous petition action.
I
As a threshold matter, we address CUMC's claim on cross appeal that the probate court erred in granting the Foundation "limited" standing, enabling it to maintain this appeal. CUMC asserts that the Foundation has no legally protectable interest in the matter and cannot be considered a real party in interest. The Foundation counters that it has a substantial pecuniary interest because in the event Estes' trust failed the funds would become a part of the residue of the estate and therefore revert to the Foundation as residuary legatee. We affirm the probate court's finding that the Foundation has standing in this matter.
Pursuant to the Revised Probate Code, MCL 700.1 et seq.; MSA 27.5001 et seq., any "interested party" can initiate proceedings in the probate court "concerning the administration and distribution of a trust, the declaration of rights, and the determination of other matters involving trustees and beneficiaries of a trust." MCL 700.805(1); MSA 27.5805(1). An "interested party" is defined in the statute as "an heir, devisee, beneficiary, ... a fiduciary or trustee named in an instrument involved, or a special party." MCL 700.7(3); MSA 27.5007(3). The statute draws no distinction between standing to maintain an action to enforce *202 the terms of a charitable trust and standing to maintain an action challenging the validity of a trust. Cf. Bogert, Trusts & Trustees (2d ed rev), § 417, p 65; 2 Restatement Trusts, 2d, § 391, pp 278-281.
In trust administration matters, the Attorney General constitutes a "special party" under the Revised Probate Code. MCL 700.10(3); MSA 27.5010(3). Indeed, pursuant to the Supervision of Trustees for Charitable Purposes Act, MCL 14.251 et seq.; MSA 26.1200(1) et seq., the Attorney General is vested with jurisdiction and control to supervise and enforce charitable trusts. MCL 14.254(a); MSA 26.1200(4)(a). However, where trust property is held by an officer or officers of a religious organization, the religious organization is exempted from provisions of the act. MCL 14.253(a); MSA 26.1200(3)(a). Thus, because the governing board of CUMC is the sole trustee of the charitable trust created under subsection j, the Attorney General was not an interested party and accordingly was divested of jurisdiction in the matter.[1]
CUMC disputes the Foundation's claim of a substantial pecuniary interest as residuary legatee, arguing that subsection j contained no reverter clause or gift over provision in the event that the bequest to CUMC failed. The general rule is that a trust fund will revert to a settlor's estate or to the heirs at law, even in the absence of an express reversion clause, if the settlor did not have a general charitable purpose but instead contemplated *203 one or more specific purposes that cannot be fulfilled because of impossibility or impracticability. In re Rood Estate, 41 Mich App 405, 414; 200 NW2d 728 (1972). Thus, reversion to a settlor's estate or heirs is entirely dependent on the existence of a specific charitable intent to which the doctrine of cy pres is inapplicable. Id.; Kostarides v Central Trust Co, 370 Mich 690, 695; 122 NW2d 729 (1963); In re Karp Estate, 108 Mich App 129, 131-132; 310 NW2d 299 (1981). See also 2 Restatement Trusts, 2d, § 404, p 326. Cf. Bogert, § 415, pp 53-54; Gifford v First Nat'l Bank of Menominee, 285 Mich 58; 280 NW 108 (1938) (no reversion because general charitable intent found and cy pres doctrine applied).
We find this case to be analogous to the Rood case, where the settlor's sole heirs at law challenged the trustees' renunciation of the specific purpose of the charitable trust. Id., pp 413-414. This Court stated:
The propositions relied upon by plaintiffs [trustees] concern the necessity for a reversion clause to give heirs an interest upon the breach or nonexecution of a trust by the trustees. The present appeal [by the defendants as the settlor's sole heirs at law] is founded upon the theory that Rood's trust contained a specific purpose and that noncompliance with this purpose results in a reversion of the trust assets to the heirs. This proposition is clearly recognized and gives defendants-appellants standing in the present appeal. [Id.]
Thus, even though subsection j contained no reverter clause or gift over provision, the specific purpose of the trust provision is sufficient to extend standing to the Foundation as residuary legatee.
Although it was Mame Estes' clear intent to *204 make an absolute gift to CUMC and to vest CUMC's board of trustees with full authority to manage the trust fund, we cannot ignore the fact that similar authority was not given to the board to determine the use of the funds. Indeed, Estes unambiguously set out a singular purpose for the funds from which CUMC now wants to diverge. Because the Attorney General has been divested of jurisdiction, and no beneficiary or cotrustee has stepped forward to challenge CUMC's petition, we believe that dismissal of this appeal would be inappropriate without taking a broad view of the Foundation's standing in this matter. Thus, we concur in the trend, recognized by this Court, toward "substantially liberaliz[ing] the concept of standing so as to greatly reduce standing as a bar to litigation." St John's-St Luke Evangelical Church v Nat'l Bank of Detroit, 92 Mich App 1, 14-15; 283 NW2d 852 (1979). See also City of Paterson v Paterson General Hosp, 97 NJ Super 514; 235 A2d 487 (1967) (where public supervision of a charitable trust is inadequate, a liberal rule of standing is justified). In this respect, we are convinced that the Foundation's participation has assured sincere and vigorous advocacy.
Accordingly, we conclude that the Foundation, as an interested party, can pursue this appeal. The probate court's order is affirmed to this extent.
II
Turning to the merits, we address the Foundation's claim that the probate court erred in finding that the restriction in subsection j was inappropriate and ordering a partial release of the restriction.
A
Preliminarily, the parties dispute whether certain *205 provisions of the UMIFA are a codification of the common-law cy pres doctrine, thereby binding this Court to follow prior case law interpreting the doctrine. Although there are some distinctions, we do not find them to be significant under these facts.
Cy pres, which in French means "as near as possible," is an equitable "saving device applied to charitable trusts so that when the specific purpose of the settlor cannot be carried out, his charitable intention can be fulfilled as nearly as possible." Rood, supra, p 415. See generally Bogert, § 431, pp 95-96. This Court has adopted three requirements for application of cy pres: (1) the court must determine whether a valid charitable trust has been created, (2) it must be shown that it is impossible or impracticable to carry out the specific purpose of the trust, and (3) the court must determine whether the testator had a general charitable intent. Rood, supra, pp 416-417; Karp, supra, pp 131-132.
In 1976, the Michigan Legislature adopted the UMIFA, MCL 451.1201 et seq.; MSA 26.1199(1) et seq., stating in the preamble that its purpose was "to establish guidelines for the management and use of investments held by eleemosynary institutions and funds." Section 8 of the act provides:
(1) With the written consent of the donor, the governing board may release, in whole or in part, a restriction imposed by the applicable gift instrument on the use or investment of an institutional fund.
(2) If written consent of the donor cannot be obtained by reason of his death, disability or legal incapacity, unavailability, or impossibility of identification, the governing board may apply in the name of the institution to a court of competent jurisdiction for release of a restriction imposed by *206 the applicable gift instrument on the use or investment of an institutional fund. The attorney general shall be notified of the application and shall be given an opportunity to be heard. If the court finds that the restriction is obsolete, inappropriate, or impracticable, it may by order release the restriction in whole or in part....
(3) A release under this section shall not allow a fund to be used for purposes other than the educational, religious, charitable, or other eleemosynary purposes of the institution affected.
(4) This section does not limit the application of the doctrine of cy pres. [MCL 451.1208; MSA 26.1199(8).]
The commentary to the uniform act provides insight into the distinction between the act and common-law cy pres:
One of the difficult problems of fund management involves gifts restricted to uses which cannot be feasibly administered or to investments which are no longer available or productive. There should be an expeditious way to make necessary adjustments when the restrictions no longer serve the original purpose. Cy pres has not been a satisfactory answer and is reluctantly applied in some states....
This section permits a release of limitations that imperil efficient administration of a fund or prevent sound investment management if the governing board can secure the approval of the donor or the appropriate court. [7A Uniform Laws Annotated, § 7, p 723.]
In addition, the language of subsection 8(4) of the UMIFA indicates that § 8 may be interpreted as less restrictive than common-law cy pres, and "[a] liberalization of addition to, or substitute for cy pres. ..." Id., p 724. Nonetheless, we find no support for the contention that the operative *207 terms used in § 8  "obsolete, inappropriate or impracticable"  are either more or less restrictive than the various terms used under cy pres  e.g., illegal, impossible, or impracticable. As a practical matter, any distinction between § 8 and common-law cy pres is insignificant under these facts because Estes' charitable trust would not fail under either application. However, because CUMC petitioned for release under the UMIFA, it will be the basis for our analysis.
B
The gravamen of this appeal is whether the restriction in subsection j of Mame Estes' will, limiting the use of the trust funds solely for the purpose of building a new church, was obsolete, inappropriate, or impracticable. The probate court found the term "impracticable," which it defined as being impossible, to be inapplicable because it was clearly not impracticable for a new church to be built. Similarly, the term "obsolete" was found inapplicable by the court because it was possible that in the future the congregation might decide to build a new church. The term "inappropriate," defined as not especially suitable or compatible, was found by the court to be more flexible. The court noted that, while only twenty-one years had elapsed since Mame Estes' will was executed, certain changes in circumstance had occurred to alleviate most of her concerns. For example, a larger church was no longer needed because the size of the congregation was shrinking, more parking was available, the church had been declared an historic site, major renovations and repairs had been made to the church, and the congregation had expressed no desire for a new church. For these reasons, the probate court concluded that the restriction *208 was inappropriate, and partially released the restriction.
We review findings of fact made by a probate court sitting without a jury for clear error. MCR 2.613(C); In re Erickson Estate, 202 Mich App 329, 331; 508 NW2d 181 (1993). A finding is clear error when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. Id. No appellate court in this state has been called on to interpret or apply § 8 of the UMIFA. Statutory language should be construed reasonably, keeping in mind the purpose of the statute. Witherspoon v Guilford, 203 Mich App 240, 246-247; 511 NW2d 720 (1994). Where a term is not defined in the statute, resort to dictionary definitions is appropriate to construe statutory language according to common and approved usage. Consumers Power Co v Lansing Bd of Water & Light, 200 Mich App 73, 76; 503 NW2d 680 (1993). See also MCL 8.3a; MSA 2.212(1).
The term "obsolete" has been defined as being "out of date" or "of a discarded or outmoded type." Random House College Dictionary, Revised Edition (1984). "Impracticable" has been defined as "not practicable, as a plan" or "unsuitable for practical use." Id. In light of the testimony of Mr. Glassen, as well as the other witnesses, we agree with the probate court that the restriction is neither obsolete nor impracticable.
The term "inappropriate" has been defined as being "not appropriate" or "not proper or suitable." Id. We cannot agree with the probate court that certain changes in circumstance have transformed Estes' explicit desire to create a fund for a new church into something inappropriate. The express language of subsection j is clear and unambiguous: The trust fund "shall be utilized by *209 said church solely for the purpose of helping to build a new church and shall not be used for repair or additions to present church or for any other purpose ...." (Emphasis added.) Attorney Glassen testified that subsection j was incorporated into both Floyd and Mame Estes' wills to reflect their concerns that someday the church would be destroyed, condemned, or simply outgrown by the congregation. Glassen further testified that he had explained to Mame Estes that her and her husband's relatively modest gift would be held in trust for "an indefinite period ... ten years or a hundred years." We believe that Estes understood when she executed her will that the then existing congregation might not directly benefit from the trust and that the benefit of a new church might only be realized by a future generation.
We are particularly struck by the fact that only twenty-one years had elapsed when CUMC petitioned for release from the restriction. An accumulation provision in a charitable trust is neither invalid nor inappropriate merely because its duration is indefinite or perpetual. Bogert, §§ 351, 352, pp 513-525. Citing public policy arguments in favor of charitable trusts, courts in other jurisdictions have upheld accumulation provisions lasting twenty-five, one hundred, and five hundred years. Id., pp 518-519. See also anno: Validity, construction, and effect of provisions of charitable trust providing for accumulation of income, 6 ALR4th 903, § 13, pp 917-919.
While there is no bright-line test for determining the reasonableness of such a restriction, we adopt the following framework for consideration of accumulation provisions in a charitable trust, as explained in Bogert, § 352, p 518:
The rule which has met with the most favor is *210 that whether a particular direction for the accumulation of income for the benefit of charity is valid is to be decided by the court, upon consideration of the reasonableness of the provision in view of the value of the trust principal and the amount of its income, the proportion of the income to be accumulated and the length of time during which the accumulation is to occur, the status of the trust, the purpose for which the accumulation is to be made, and any other relevant circumstances.
Here, after consideration of the above factors, we are unable to say that either the lapse of twenty-one years or the change in circumstances cited by CUMC has rendered Estes' express wishes obsolete, impracticable, or inappropriate. Bogert, § 439, pp 171-176.
In Michigan, charitable trusts are construed liberally and given effect whenever possible. John Robinson Hosp v Cross, 279 Mich 407, 412; 272 NW 724 (1937); Rood, supra, p 422. While we have no doubt that CUMC's proposed uses for the funds are benevolent, they contradict Mrs. Estes' specific purpose for the trust and, absent compelling evidence that this purpose is obsolete, impracticable, or inappropriate, we will not condone a release. Therefore, under these facts, a too lenient reading of § 8 is contraindicated, and we hold that the probate court clearly erred in concluding that the restriction was inappropriate. Accordingly, we reverse the probate court's order partially releasing the restriction.
Affirmed in part and reversed in part.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.
[1] We cannot explain why the Attorney General acknowledged his lack of jurisdiction when notified of the Foundation's initial petition to construe subsection j, but did not make such an acknowledgment when notified of CUMC's petition for release from the restriction. In response to CUMC's petition, the Attorney General merely stated that he had no objection to the petition and that he would not attend the hearing.